IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:11-cv-22617-KMM

JEANTY MARCKENSON,

    Plaintiff,

vs.

LAL PEKER, LLC, d/b/a/ VOCELLI PIZZA,
and MUSTAFA PEKER,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss Amended Complaint, *or in the Alternative*, Defendants' Motion for Summary Judgment (ECF No. 14). Plaintiff filed a Response (ECF No. 22), and Defendants filed a Reply (ECF No. 23). The Motion is now ripe for review. UPON CONSIDERATION of the Motion, the Response, Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.    **BACKGROUND**[1]

Defendant LAL Peker, LLC d/b/a/ Vocelli Pizza, is a Florida corporation, and Defendant Mustafa Peker is an individual and co-owner of LAL Pecker. On July 22, 2011, Plaintiff Jeanty

---

[1] The facts herein are taken from Plaintiff's Amended Complaint (ECF No. 14); Defendants' Motion to Dismiss Amended Complaint, *or in the Alternative*, Defendants' Motion for Summary Judgment; Defendants' Notice of Filing Documentation in Support of Defendants' Motion to Dismiss Amended Complaint, *or in the Alternative*, Defendants' Motion for Summary Judgment (ECF No. 15); Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Amended Complaint, *or in the Alternative*, Defendants' Motion for Summary Judgment; and Defendants' Reply. All facts are construed in the light most favorable to Plaintiff.

Marckenson, a former employee of Defendant LAL Peker, filed a Complaint against Defendants alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*) ("FLSA" or "the Act") on the part of the Defendants. Plaintiff alleges that from August 2009 through February 2011 Defendants failed to pay him overtime wages in violation of 29 U.S.C. § 207(a)(1).[2]

On August 29, 2011, Defendants filed a Motion to Dismiss Amended Complaint, *or in the Alternative*, Motion for Summary Judgment. In their Motion, Defendants claim that this Court lacks jurisdiction over this matter because Defendant LAL Peker, LLC is not a covered "enterprise" under the FLSA, and because Plaintiff is not covered as an individual under the FLSA. On September 19, 2011, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss Amended Complaint, *or in the Alternative*, Motion for Summary Judgment. On September 22, 2011, Defendants filed a Reply.

## II. STANDARD OF REVIEW

Unlike traditional motions to dismiss for lack of jurisdiction, which this Court would evaluate pursuant to Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss a claim for lack of jurisdiction brought under the FLSA is treated differently. This is because "the sections of the FLSA that provide the substantive relief . . . are intertwined with and dependent on the section of the FLSA that defines the scope of the FLSA." Turcios v. Delicias Hispanas Corp., 275 Fed. App'x 879, 882 (11th Cir. 2008). When a jurisdictional challenge implicates the merits of the underlying claim, "the proper course of action for the district court is to find that

---

[2] Subject to exceptions, 29 U.S.C. § 207(a)(1) provides in part that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." Morrison v. Amway Corp., 323 F.3d 920, 925 (11th Cir. 2003). In such instances, the court is to resolve the issue in accordance with a Rule 56 summary judgment analysis and review of the evidence. Id. at 929–30. See also Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A., 104 F.3d 1256, 1258 (11th Cir. 1997).

Accordingly, summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Moreover, "A party must support its assertion that there is no genuine issue of material fact by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials.'" Ritchey v. S. Nuclear Operating Co., No. 10-11962, 2011 WL 1490358, at *1 (11th Cir. Apr. 20, 2011) (quoting Fed. R. Civ. P. 56(c)(1)). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III. ANALYSIS

#### A. Enterprise Coverage

Title 29 U.S.C. § 203(s)(1)(A) governs whether an enterprise is subject to the requirements of the FLSA. It requires that for enterprise coverage to apply, the enterprise must (1) have employees "engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) have "not less than $500,000" in annual gross sales or business transacted. Id. § 203(s)(1)(A). It is important to note that while the first prong is internally disjunctive, the two prongs taken together are conjunctive. Therefore, for enterprise coverage to apply, an enterprise must meet the requirements of both prongs.

Defendants argue that they are not subject to the enterprise coverage requirement of the FLSA. To support this claim, Defendants have produced (1) copies of Department of the Treasury, Internal Revenue Service Form 1065 U.S. Return of Partnership Income ("IRS Forms") submitted on behalf of Defendants for fiscal years 2009 and 2010, and (2) copies of monthly sales reports from August 2009 through April 2011. Defs' Doc. in Supp. of Summ. J. Ex. 1–3 (ECF No. 15-1). These documents show that Defendants had gross sales of $112,155 in FY 2009, and $436,389 in FY 2010. Defendants have also submitted the affidavit of Pinar Peker, co-owner of Defendant LAL Peker, testifying to the accuracy of the data contained within the IRS Forms and monthly sales reports. Defs' Doc. in Supp. of Summ. J. Ex. A (ECF No. 15-1). Plaintiff disputes the method Defendants used in calculating and subsequently declaring their "gross sales" for FY 2010. Specifically, Plaintiff asserts that the monthly sales reports submitted by Defendants demonstrate that Defendants failed to include in their calculation of gross sales approximately $102,872 in lost revenue attributable to coupons or discounts provided to customers. Pl.'s Resp. at 6. Plaintiff also claims to have personal knowledge that Defendants'

weekly sales revenues "averaged above $8,000.00 per week and on occasions exceeded $11,000.00." Pl.'s Resp. Ex. C.

The issue before the Court is whether "gross volume of sales made or business done" as used in 29 U.S.C. § 203(s)(1)(A) incorporates unrealized revenue attributable to coupons or discounts provided to customers. Interpretations of the FLSA are determined ultimately by the Court. See Mitchell v. Zachry, 362 U.S. 310 (1960); Kirschbaum v. Walling, 316 U.S. 517 (1942); see also 29 C.F.R. § 779.8 (2011). In interpreting the FLSA, the Court may rely on official interpretations of the FLSA promulgated by the Department of Labor. Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) ("[T]he rulings, interpretations and opinions of the Administrator under [the FLSA], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."); Dade Cnty. Fla. v. Alvarez, 124 F.3d 1380, 1385 (11th Cir. 1997).

Title 29 C.F.R. § 779.259 provides helpful guidance in interpreting "gross volume of sales made or business done":

> The gross volume of sales made or business done means the gross dollar volume (not limited to income) derived from all sales and business transactions including, for example, gross receipts from service, credit, or other similar charges. *Credits for goods returned or exchanged and rebates and discounts, and the like, are not ordinarily included in the annual gross volume of sales or business.* . . . Gross volume is measured by the price paid by the purchaser for the property or service sold to him . . .

29 C.F.R. § 779.259 (2011) (emphasis added). When a coupon or discount is provided to a customer free of consideration, a true price reduction occurs, and the new price paid by the customer represents the sale amount. This is consistent with the Department of Labor's view that "gross volume of sales" is measured by the price actually "paid by the purchaser for the

property or service sold to him." Id. Consequently, having found this interpretation reasonable, this Court adopts a view of "gross volume of sales made or business done" that excludes lost revenue attributable to coupons or discounts provided to customers.

In light of this interpretation, it is clear that enterprise coverage does not apply to Defendants. Excluding approximately $103,000 in discounts provided to customers from Plaintiff's FY 2010 gross sales calculation, Defendants "gross volume of sales made or business done" falls well short of the $500,000 threshold required by 29 U.S.C. § 203(s)(1)(A). This is substantiated by the tax forms submitted on behalf of Defendants for fiscal years 2009 and 2010. Moreover, Plaintiff's alleged personal knowledge that Defendants' weekly sales revenues "averaged above $8,000.00 per week and on occasions exceeded $11,000.00," is insufficient to create a genuine issue of material fact in light of Plaintiff's implicit acceptance and overt reliance on Defendants' monthly sales reports from August 2009 through April 2011. Even discounting Plaintiff's acceptance of Defendants' monthly sales reports, Plaintiffs' alleged personal knowledge in no way conflicts with the amount of income reported by Defendants. Without any further specificity as to how much revenue Defendants' collected, or without any articulation by Plaintiff as to how often and for what duration he closed Defendants' register, Plaintiff's assertion does not amount to more than a conclusory allegation. Thus, summary judgment on the issue of enterprise coverage is awarded in favor of Defendants.

B. Individual Coverage

Though an employer may not constitute an "enterprise," the employer may still be subject to the requirements of the FLSA if an employee (1) engaged in commerce, or (2) engaged in the production of goods for commerce. 29 U.S.C. § 207(a)(1). For an employee to be "engaged in commerce" under the FLSA, he must have directly participated in "the actual movement of

persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." Thorne v. All Restoration Servs., 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 C.F.R. § 776.23(d)(2)(2005) and 29 C.F.R. § 776.24 (2005)). See also McLeod v. Threlkeld, 319 U.S. 491, 496 (1943) (finding that plaintiff's activities were purely local, and he was not engaged in commerce when he merely cooked and cleaned for railroad workers).

Plaintiff contends that he qualifies for individual coverage because he (1) accepted credit cards, which are processed through interstate commerce; and (2) transacted business with "non-Florida and international customers" by delivering food to local hotels. Pl.'s Resp. Ex. A (ECF No. 22-2). Defendants argue Plaintiff's claims do not amount to "interstate commerce." Defs' Reply at 5–6.

In Dent v. Giamo, 606 F. Supp. 2d 1357 (S.D. Fla. 2009), the Court evaluated similar arguments. There, the Court held that despite the plaintiff's claims that approximately 70% of the defendant's customers were not Florida residents, because the plaintiff's contact with the non-residents was primarily local, and because the defendants did not solicit business across state lines, neither the plaintiff nor the defendant were engaged in "interstate commerce." Id. at 1361; cf. McLeod, 319 U.S. at 496. Moreover, the Court in Thorne, while declining to decide whether credit card transactions alone could constitute an instrumentality of interstate commerce, nevertheless found that the plaintiff's belief that a credit card he used to purchase local goods was processed across state lines was "not sufficient evidence of engagement in interstate commerce to require submission of the issue to a jury." Thorne, 448 F.3d at 1267; see also

Kitchings v. Fla. United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282, 1293 n.26 (holding that plaintiff's use of a credit card to purchase local goods did not constitute "engagement in commerce").

This Court declines to find that Plaintiff's conduct amounted to interstate commerce. Plaintiff has failed to produce any evidence indicating that by merely processing credit cards for goods purchased locally he was engaging in interstate commerce. Plaintiff offers no evidence as to where, outside of the state of Florida, he "engaged in banking and credit card transactions."[3]

Additionally, Plaintiff's claim of having transacted business with "non-Florida and international customers" by delivering food to local hotels fails for similar reasons. Plaintiff provides no evidentiary basis for this claim other than his recollection that many of the "tourists" he helped "did not speak English." Pl.'s Resp. Ex. A. Mindful of Florida's large Spanish-speaking population, the Court finds Plaintiff's "scintilla" of evidence insufficient to survive a Rule 56 Motion for Summary Judgment. Consequently, summary judgment on the issue of individual coverage is awarded in favor of Defendants.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss Amended Complaint, *or in the Alternative*, Defendants' Motion for Summary Judgment (ECF No. 14) is GRANTED.

---

[3] Though Plaintiff highlights Defendants' use of the Internet to process orders, Pl.'s Resp. Ex. A., Plaintiff never contends that this constitutes his participation in "interstate commerce" for purposes of individual coverage. For this reason, the Court declines to address the issue.

All claims against Defendants LAL Peker, LLC d/b/a/ Vocelli Pizza and Mustafa Peker are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 19th day of October, 2011.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record